**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

LINDSAY RAFFERTY, on behalf of
herself and all others similarly situated,
known and unknown,

        Plaintiff,

v.

DENNY'S INC., a Florida Corporation,

        Defendant.

Case No. 1:19-cv-24706-DLG

**DEFENDANT DENNY'S, INC.'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant Denny's, Inc.

("Denny's") hereby moves for an order granting summary judgment and hereby submits its

memorandum of law in support of its Motion for Summary Judgment on all claims asserted against it

in this action.

**PRELIMINARY STATEMENT**

The Court should grant summary judgment and dismiss all claims against Denny's because

the undisputed facts, extracted almost exclusively from Plaintiff Lindsay Rafferty's ("Rafferty") own

sworn testimony, prove that she cannot succeed on any of her claims.

Rafferty is a former Denny's server who worked at one Denny's restaurant location, in

Akron, Ohio, on a part-time basis.  In her Complaint, Rafferty falsely alleges that Denny's failed to

pay her properly under the federal Fair Labor Standards Act ("FLSA") in three ways.  ***First***, Rafferty

alleges that Denny's owes her wages because it did not provide her notice that she would be paid on

a tip credit basis, as required by 29 U.S.C. § 203(m).  (ECF No. 1 ("Compl.") ¶ 49.)  Despite this claim, Rafferty admits that throughout the relevant time period,[1] she "underst[oo]d how [she] w[as] paid [on a tip-credit basis] and why."  (Ex. 1, Rafferty Deposition Transcript ("Rafferty Dep. ___") 175:21-24, 176:9-177:3.)  Nor could Rafferty reasonably claim otherwise:  Denny's provided her a host of documents throughout her employment, one of which she signed by hand, that expressly provided her with the requisite notice.  (*Id.* 175:25-176:8; Ex. 2, Pl.'s Dep. Ex. 2; SOF ¶¶ 23-28.)

*Second*, Rafferty alleges that Denny's improperly paid her the tip credit minimum wage for time spent working in a "dual job" unrelated to her work as a server.  (Compl. ¶ 57.)  But her deposition testimony reveals that the only supposedly "*unrelated*" duties she claims to have performed are *not unrelated* at all and, in any event, are incidental to her occupation as a server and do not constitute the duties of a separate occupation that required additional compensation.

*Third*, Rafferty alleges that Denny's improperly paid her at the tip credit minimum wage for the time she spent performing allegedly excessive "non-tipped" duties "*related*" to her server work, and therefore, violated the so-called "80/20" rule set out in prior U.S. Department of Labor ("DOL") guidance.  (Compl. ¶¶ 61-62, 64.)  However, the DOL rescinded the 80/20 rule.  And, even if the 80/20 rule were still applicable, Rafferty now concedes that she is "not sure if there [is] any particular week [she] spent more than 20 percent of [her] time doing sidework," and that she is unable to identify any workweek in which that occurred.  (Rafferty Dep. 148:12-15, 173:20-23; SOF ¶¶ 46-48.)  This admission is fatal to her claim.

## STATEMENT OF FACTS

Denny's respectfully refers the Court to its Statement of Material Undisputed Facts ("SOF"), filed contemporaneously herewith for a full recitation of all relevant facts.  Denny's includes this

---

[1] It is undisputed that, pursuant to the FLSA's statute of limitations, the relevant time period in this action is, at most, November 13, 2016 to present, even though Rafferty was employed by Denny's as far back as 2012.  (ECF No. 1 at ¶ 43.)

brief factual background for the purpose of outlining the most salient facts and context.

## A.  DENNY'S ORGANIZATIONAL MODEL

Denny's is an American, diner-style restaurant chain with over 1,700 corporate and franchise restaurants worldwide.  (SOF ¶¶ 1-2.)  Corporate-owned Denny's restaurants are overseen and managed by a General Manager and Restaurant Managers.  (*Id.* ¶¶ 3, 5.)  General Managers and Restaurant Managers are responsible for hiring servers, conducting and overseeing the orientation, onboarding, and training process for new servers, setting server schedules, assigning server sidework responsibilities, and otherwise ensuring that their restaurant is in compliance with Denny's company policies and applicable laws.  (*Id.* ¶¶ 3-5, 21; Ex. 11, Baker Decl. ¶ 4.)

Where permitted by state law, Denny's compensates servers by utilizing a tip credit.  (SOF ¶ 6.)  Denny's pays servers a permissible subminimum wage hourly rate, and Denny's servers keep 100% of all tips earned during their shift, which must be reported.  (*Id* ¶¶ 7-8.)  If a server's overall hourly rate during any given workweek does not at least meet the applicable minimum wage, Denny's payroll system automatically makes up the difference through "a true up" payment to ensure that servers receive at least minimum wage for each hour worked.  (*Id.* ¶ 9.)

## B.  RAFFERTY'S EMPLOYMENT WITH DENNY'S

Denny's hired Rafferty as a server on February 28, 2012.[2]  (SOF ¶ 10.)  Rafferty resigned in October 2018.  (*Id.*)  From November 13, 2016, through the end of her employment—the time frame relevant to this action—Rafferty "worked fairly limited hours," on a part-time basis.  (*Id.* ¶ 12 (quoting Rafferty Dep. 86:13-15).)  In fact, Rafferty typically worked just one or two shifts per work and averaged just 6.29 hours worked per week during that time.  (*Id.* ¶ 14.)

---

[2] Rafferty was also trained and approved to work as a host/hostess.  Although Rafferty has repeatedly claimed she never was given an opportunity to clock in under a different job code, she did, in fact, clock in and receive full minimum wage pay as a host/hostess numerous times.  (*E.g.*, Ex. 9 at DENNYS01447 lines 100-101, 105-106.)

1.      **Rafferty Was Informed of the Tip Credit During Her First-Day Orientation**

On Rafferty's first day of work in February 2012, she went through the Denny's orientation and onboarding process, which was led by Akron Restaurant Manager Amber Demattio.  (*Id.* ¶¶ 21.) Consistent with Denny's company policy, Rafferty was informed about her tip credit compensation in multiple ways during that orientation.  (SOF ¶¶ 21-30.)

First, Demattio printed a copy of Rafferty's Employee Information Sheet, which stated in bold font that: **"This [document] is to inform you that the company will be utilizing the tip credit provided under the Federal Labor Standards Act and/or applicable state law."**  (SOF ¶¶ 23-24; Ex. 2.)  The Employee Information Sheet also informed Rafferty:

- That her hourly pay rate as a server would be $3.85 (then the applicable wage rate for tipped employees in Ohio).  (SOF ¶ 24; Ex. 2);

- That the applicable minimum wage was $7.70.  (*Id.*);

- That the difference between those two pay rates was the $3.85 "Tip Credit" Denny's would take per hour.  (*Id.*); and

- That Denny's would only take a tip credit for time spent as a server, no other job codes or positions would be paid on a tip credit basis.  (*Id.*).

Rafferty reviewed that document with Demattio, and then they both signed it by hand.  (SOF ¶¶ 23; Ex. 2.)

Second, Demattio gave Rafferty a tour of the restaurant and, during that tour, showed Rafferty the government labor law posters prominently posted in the restaurant's break room.  (SOF ¶¶ 26.) These posters informed all employees of the applicable state minimum wage, applicable federal minimum wage, applicable subminimum wage for tipped employees, and that Denny's was not permitted to take a tip credit greater than the tips actually reported.  (SOF ¶¶ 27-28.  The restaurant updated these posters each time a new version was released (i.e. there was an increase in the state minimum wage), and Rafferty admits that, as a result, she was informed and understood all of this

information throughout her employment.  (SOF ¶ 28; Exs. 6 & 15.)

Third, Demattio orally informed Rafferty of the required tip credit information.
(Demattio Decl. ¶ 9.)  Indeed, it was Demattio's typical practice to empathize the tip credit
notification and reporting requirements in her onboarding sessions and she "explained how the
tip credit process worked to each server in a practical sense to make sure they understood how
they were going to be paid."  (Demattio Decl. ¶¶ 5, 9; SOF ¶ 29.)  Specifically, as Demattio
testified, she informed Rafferty "what [] Rafferty's hourly pay rate from Denny's would be,"
"what the minimum wage was at the time," "that the difference between the hourly pay rate and
the minimum wage rate ($3.85) was the expected 'tip credit' amount," "that servers at Denny's
are not expected to pool tips with anyone else, so [] Rafferty was to keep all the tips that she
received during her shifts," "that Denny's would never claim a tip credit for more than what []
Rafferty reported she earned in tips during the week," and "that only those who received the tip
credit information would be paid on a tip credit basis."  (Demattio Decl. ¶ 9; SOF ¶ 29; *see also*
Baker Decl. ¶ 7.)

Rafferty, on the other hand, has *no recollection* of what Demattio did or did not say
during her orientation and onboarding.  (SOF ¶ 22.)  However, Rafferty contemporaneously
acknowledged that Demattio had discussed "tips" and "tip reporting requirements" with her and
gave her the restaurant tour during orientation.  (SOF ¶ 30; Demattio Decl. ¶ 11 & Ex. B.)

Rafferty was also provided additional tip credit notice information throughout her
employment.  Specifically, Denny's promulgated multiple Employee Guidebooks applicable to
Rafferty, which she had access to, all of which contained a section for "Tipped Employees" that
explained the "tip credit" compensation system and made clear that "Denny's does not
participate in tip pooling arrangements, and tipped employees should retain all tips received."

(SOF ¶¶ 31-33; Ex. 5.)  Also, as the Ohio subminimum wage increased during the 2016-2018 relevant time period, Rafferty was informed of each change verbally and electronically on the Workday portal and platform.  (SOF ¶¶ 36-37.)

### 2. Rafferty's Duties as a Denny's Server

As a Denny's server, Rafferty was responsible for additional duties in addition to interacting directly with customers.  (SOF ¶ 38.)  These duties are generally referred to within the restaurant industry as "sidework."  (*Id.*)  For example, in Rafferty's case, sidework included wiping down and restocking shelves and syrup in the to-go area, stocking napkins, removing and cleaning ice bins, and cleaning syrup holders.  (*Id.*; Ex. 10 at DENNYS00969-972.)  All of the sidework required of servers in Rafferty's store was listed in a sidework notebook.  (*Id.*)  This notebook, which was created by the local store management, delineated which sidework tasks were assigned to which servers based on the shift and the number of servers working during the shift.  (SOF ¶ 39; Ex. 10 at DENNYS00967-68.)  As a result, Rafferty's assigned sidework varied from shift to shift based on a variety of factors.  (SOF ¶¶ 39, 46.)  Rafferty has no recollection, and admits she has no way to determine, what sidework duties she performed during any given shift or workweek.  (*Id.* ¶ 46.)

Although restaurant management generally expected that all servers conduct sidework on a "running" basis, meaning that the sidework was completed simultaneously with time spent serving guests, Rafferty sometimes performed her sidework at the end of her shift based on "personal preference."  (SOF ¶¶ 41-43.)

Beyond "guessing," Rafferty is also unable to identify the amount of time she spent doing sidework during any particular shift or workweek.  (SOF ¶ 47.)  She concedes that her sworn declaration estimating she spent "at least 40 percent of [her] time performing" sidework is "not an accurate statement."  (SOF ¶ 49 (quoting Rafferty Dep. 173:12-19).)  In fact, Rafferty is "**not**

sure if there [is] any particular week [that] [she] spent more than 20 percent of [her] time doing sidework."  (SOF ¶ 48 (quoting Rafferty Dep. 148:12-18).)

      **3.**      **Rafferty's Work in an Allegedly "Dual" Occupation**

Rafferty also claims to have performed certain duties allegedly unrelated to her job as a server.  Specifically, Rafferty was tasked—on an as-needed basis—with greeting and seating guests who entered the restaurant, cashing out guests who had completed their meal, answering the restaurant phone, and handling various aspects of to-go or delivery orders.  (SOF ¶¶ 52-56.) Rafferty, however, admits that these purportedly "unrelated" duties were part of the guest experience and, therefore, directly impacted the amount of tips she received.  (*Id.*)  Not surprisingly, and as detailed below, all of these duties are considered "related to" the server occupation and therefore cannot support a "dual jobs" claim.

## <u>ARGUMENT</u>

### A.      DENNY'S PROVIDED RAFFERTY THE REQUIRED TIP-CREDIT NOTICE

The FLSA permits employers to pay a reduced minimum wage to tipped employees, including servers.  29 U.S.C. § 203(m); 29 C.F.R. § 531.50 *et seq.*  In that circumstance, the employers "factor the employee's tips into the calculation of the employee's wages."  *Saldana v. Bird Rd. Car Wash, Inc.*, No. 15-cv-23329, 2016 U.S. Dist LEXIS 135860, at *6 (S.D. Fla. Sep. 30, 2016) (citing U.S.C. § 203(m)).  "The difference between the standard minimum wage and the reduced minimum wage paid to tipped employees is known as the 'tip credit.'"  *Id.* (quoting *Goldin v. Boce Grp.*, 773 F. Supp. 2d 1376, 1377-78 (S.D. Fla. 2011)).

In order for an employer to claim a tip credit, the tipped employee must be "informed" of the tip credit practice and be permitted to retain all tips she receives.  29 U.S.C. § 203(m).  DOL regulations (29 C.F.R. § 531.59(b)) further provide:

An employer is not eligible to take the tip credit unless it has informed its tipped

employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

To give sufficient notice under Section 203(m), "an employer must inform its employees either verbally or in writing 'that it intends to treat tips as satisfying part of the employer's minimum wage obligations.'"  *Garcia v. Koning Rests. Int'l*, No. 12-cv-23629, 2013 U.S. Dist. LEXIS 186533, at *10 (S.D. Fla. May 10, 2013) (quoting *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Spp. 2d 1306, 1310 (S.D. Fla. 2007)).  Importantly, the "employer does *not* have to give its employees a 'rigorous explanation' of how the 'tip credit' works." *Id.* (emphasis added*).* Rather, "it is enough to 'inform' them of it." *Pellon*, 528 F. Supp. 2d at 1310.

Thus, an employer can sufficiently inform its employees through one or more of a variety of methods, such as (i) "by giving them 'written materials describing the employer's tip policy (*Garcia*, 2013 U.S. Dist. LEXIS 186533, at *10 (citing *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 822 (N.D. Ill. 2011)), (ii) "by prominently displaying a proper Department of Labor poster explaining the tip credit," (*id.* (citing *Pellon*, 528 F. Supp. 2d at 1310)), (iii) through oral conversations with the employees (*Pellon*, 528 F. Supp. 2d at 1310), or (iv) by some combination thereof (*Calabrese v. TGI Friday's, Inc.*, 2017 U.S. Dist. LEXIS 181598, at *15-18 (E.D. Pa. Nov. 2, 2017) (granting summary judgment to employer based on a combination of information provided to employee in the form of discussions with managers, computerized training, handbook review, and labor law posters)).  Once a tipped employee is on notice, the

employer may take a tip credit.  29 U.S.C. § 203(m).[3]

### 1.    Rafferty Lacks Article III Standing To Pursue Her Tip Credit Claim

As an initial matter, Rafferty lacks the standing required under Article III of the United States Constitution to bring her claim that Denny's failed to properly notify her of its intention to take a "tip credit."  To establish standing, Rafferty "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Rafferty holds the burden.  *See id.*  To establish injury-in-fact, she must show that she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 1548.

In other words, the injury must be real, not abstract.  *Burdick v. Kennedy*, 700 F. Appx. 984, 986 (11th Cir. 2017).  Accordingly, courts have held that plaintiffs lack standing to bring statutory notice claims where, as here, the plaintiff was "not seeking to compel [defendant] to provide him with information" or where defendant had failed to provide a compliant disclosure upon demand to do so.  *Groshek v. Time Warner Cable, Inc.* 865 F. 3d 884, 888 (7th Cir. 2017) (finding lack of standing under the FCRA on the basis that the purpose of the statutory disclosure requirements were not to protect the plaintiff from "receipt of a non-compliance disclosure," but to "decrease the risk that a job applicant would unknowingly consent to allowing a prospective employer to procure a consumer report"); *see also Long v. Southeastern Penn. Trans. Auth.*, 903 F.3d 312, 321 (3d Cir. 2018) (same).

---

[3] Plaintiff has taken the position that case law issued prior to 2011 is not controlling because the DOL revised 29 C.F.R. § 531.59(b) in 2011 to include the five components identified above.  However, many courts—including courts in this district—have since held that the revised regulation did "not require employers to do anything other than what they were already obligated to do under section 203(m), which is inform employees of the provisions of [that] subsection."  *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42, 56 (D.D.C. 2012); *see also, e.g., Garcia*, 2013 U.S. Dist. LEXIS 186533 at *10-11 n.3; *Saldana*, 2016 U.S. Dist. LEXIS 135860, at *7-8; *Gerry v. Lin*, No. 4-18-cv-00010, 2019 U.S. Dist. LEXIS 6352, at *8 (W.D. Ky. Jan. 14, 2019) (collecting cases).

Here, Rafferty has suffered no concrete injury in fact as a result of the supposedly deficient tip credit notice (which, as detailed below, was not deficient at all).  Indeed, her deposition testimony conclusively establishes that Rafferty "understood how [she] w[as] paid and why," including understanding her subminimum hourly wage rate, that Denny's would take a tip credit, and that she was to retain all tips she received because Denny's does not pool tips. (SOF ¶¶ 34-35.)  Further, Rafferty's payroll records establish that at no time did she ever earn less than the minimum wage during her employment, when adding tips, and she alleges nothing to the contrary.  (SOF ¶ 20.)  In fact, Rafferty benefited greatly from the tip credit structure: when including her tips, Rafferty consistently earned well above the applicable minimum wage. (*Id.*)  So much so that in December 2019, just a month after filing her Complaint in this Court, she returned to the same Akron Denny's and asked for her job back.  (*Id.* ¶ 10.)  In short, Rafferty did not suffer any of the harm that Section 203(m) seeks to prevent:  she was fully aware that she would be paid a subminimum hourly wage, she always made minimum wage or more during each workweek, and she was allowed to retain all tips she received.  Thus, she has not suffered an injury in fact sufficient to confer Article III standing.

## 2.    Denny's Provided Rafferty Proper Tip Credit Notice

Rafferty alleges that Denny's failed to comply with the tip-credit notice requirements by failing to inform her of: "(1) the amount of the tip credit being claimed by Defendant; (2) that the amount claimed by Defendant must not exceed the value of the tips actually received by Plaintiff . . .; and (3) that all tips received by Plaintiff . . . must be retained by the Plaintiff . . . in the absence of a valid tip pooling arrangement."  (Compl. ¶ 51.)  Rafferty does not allege that Denny's failed to disclose any other information required under § 203(m).

As an initial matter, Rafferty's onboarding and training checklists, which she initialed and signed, establish that it was Denny's policy and procedure to inform all new server hires of "Tip

Reporting Requirements" and "Tips" during the onboarding and orientation process.  (SOF ¶ 30; Exs. 3-4.)  Rafferty's General Manager also testified that it was her Restaurant Managers' practice to provide all of the required information.  (SOF ¶ 29; Baker Decl. ¶¶ 4, 6-7.) Restaurant Manager Demattio testified she provided the required tip information specifically to Rafferty during orientation.  (SOF ¶ 29.)  Rafferty does not and cannot offer any non-speculative evidence to the contrary.  Indeed, Rafferty concedes that she has no recollection whatsoever what was told to her during that orientation session.  (SOF ¶ 22.)  Accordingly, any claim that Denny's did not provide her the requisite notice is based on nothing but conjecture and speculation.  Moreover, the undisputed evidence, and ultimately Rafferty's *own testimony*, establish that Denny's informed her of all three components she alleges were lacking.[4]  (Compl. ¶¶ 36, 51.)

First, contrary to Rafferty's allegation, Denny's specifically informed her of the amount of the tip credit Denny's would claim.  Indeed, Rafferty admitted under oath that she was informed Denny's would take a $3.85 tip credit.  (SOF ¶ 24; Rafferty Dep. 59:4-6, 59:18-20.)  On her very first day of work, Rafferty was provided the Employee Information Sheet, which plainly states not only that Denny's would "be utilizing the tip credit" approach but specifically that Denny's would take a $3.85 tip credit per hour.  (Ex. 2.)  Rafferty received, reviewed, and signed that document.  (*Id.*; SOF ¶¶ 23-24; Rafferty Dep. 57:7-23.)

Second, Rafferty admits she was informed and understood that if, during any given workweek, her reported tips combined with her cash wage did not equal the applicable minimum wage, Denny's would make up the difference with a "true up" supplemental payment.  (SOF ¶¶ 28-29.)  In other words, Rafferty was informed and understood that Denny's would not take a tip

---

[4] The undisputed facts also establish Rafferty was informed of the other two components.  She was informed the amount of the cash wage she would be paid as a server through the Employee Information Sheet and labor posters. (SOF ¶¶ 24, 27.)  She was also informed that only those who received the tip credit information would be paid on a tip credit basis.  (*Id.* ¶ 29.)

credit in an amount that exceeded the value of the tips she actually received. This information was also provided to Rafferty through the posted labor law posters, which explained: "Employers electing to use the tip credit provision must be able to show that tipped employees receive at least a minimum wage when direct or cash wages and the tip credit amount are combined." (Ex. 6.)

Third, during Rafferty's orientation and onboarding, Restaurant Manager Demattio told Rafferty to retain and report all tips she received. (SOF ¶ 29.) Evidence that, again, Rafferty cannot rebut because she has no recollection what she was told that day. (*Id.* ¶ 22.) And even if she could reasonably rebut that fact, Rafferty was also explicitly provided this information in writing via multiple iterations of the Denny's Employee Guidebook, which stated: "Denny's does not participate in tip pooling arrangements, and tipped employees should retain all tips received." (Ex. 5; SOF ¶¶ 31-33.)

On this record, it simply cannot be reasonably disputed that Denny's provided Rafferty with ample notice Denny's "intend[ed] to treat tips as satisfying part of [its] minimum wage obligations.'" *Garcia,* 2013 U.S. Dist. LEXIS 186533, at *10. Denny's provided Rafferty with the Employee Information Sheet, which she reviewed and signed. Denny's provided Rafferty with the Employee Guidebook, containing specific information relating to tipped employees. Denny's posted government-approved labor law posters and showed them to her. Rafferty's Restaurant Manager also orally explained all of this information to Rafferty during her orientation period. The Court need look no further than Rafferty's own testimony that she "***did understand*** how [she] w[as] paid and why" she was paid on a tip credit basis. (SOF ¶ 35; Rafferty Dep. 175:21-24, 176:9-12.)

Courts in the Eleventh Circuit routinely grant summary judgment in the employer's favor on a record much less robust than what Denny's presents here. In fact, "[a] majority of district

courts in this Circuit have concluded the prominent display of a poster that includes Department of Labor approved language satisfies the notice requirement." *Miller v. Garibaldi's Inc.*, No. CV414-007, 2018 U.S. Dist. LEXIS 55025, at *10 (S.D. Ga. Mar. 30, 2018) (citing *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1293 (N.D. Ga. 2014); *Garcia*, 2013 U.S. Dist. LEXIS 186533, at *4; *Pellon*, 528 F. Supp. 2d at 1310).

Where, as here, an employer also presents contemporaneous, written evidence demonstrating plaintiff was on notice of the tip credit plan, courts are even more inclined to grant summary judgment. *See e.g., Garcia*, 2013 U.S. Dist. LEXIS at *16-17; *Saldana*, 2016 U.S. Dist. LEXIS at *8-9. *Garcia* is particularly instructive. There, like here, the plaintiff signed a form specifically detailing the employer's intent to take a tip credit. 2013 U.S. Dist. LEXIS, at *16-17. Specifically, the plaintiff acknowledged that he would "be paid as a Tipped Employee and earn a tip rate of $5.00 an hour while employed by [Defendant]" and that it was "important that [he] report all [his] daily tips to [his] employer." *Id.* Coupled with further oral explanation regarding the tip credit process from his manager, that written acknowledgment was fatal to the plaintiff's tip credit notice claim. *Id.* at *19. The same result should occur here.

## B.    RAFFERTY NEVER WORKED IN A DUAL OCCUPATION FOR DENNY'S

Rafferty claims that Denny's violated the FLSA by purportedly requiring that she regularly perform work unrelated to her tipped occupation as a server. (Compl. ¶¶ 56-59.) In other words, she claims she was forced to perform "dual jobs" and improperly paid a subminimum wage for both.

The FLSA does not contain any provision regarding "dual jobs." Rather, such claims arise from DOL regulations interpreting the statute. Specifically, DOL has recognized that, in some circumstances, an employee may be engaged in separate and distinct, "dual jobs," for the same employer. 29 C.F.R. § 531.56(e). For example, a hotel might employ "a maintenance man" who

also works "as a waiter." *Id.* In such circumstances, the employee may be paid on a tip-credit basis for work performed as a waiter (a tipped occupation) but not as a maintenance man. *Id.*

In setting forth this dichotomy, however, the DOL expressly distinguishes such "dual job" situations from the situation presented here: a waitress who performs tasks *related to* her tipped work, such as "cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses." *Id.* The regulations permit a tip credit to be taken for time spent doing those duties, as well as "preparatory or closing activities, roll[ing] silverware and fill[ing] salt and pepper shakers," because they are "duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips." U.S. Dept. of Labor Field Operations Handbook ("FOH") Ch. 30d00(f)(2), (f)(3)(a).[5] To determine whether a specific duty is "related to the tipped occupation," DOL and courts may consult the Occupational Information Network ("O*NET"), an online source of occupational information and consider any duties listed as "core" or "supplemental" as "related." DOL FOH Ch. 30d00f(3).[6]

Whether styled as "dual jobs" or "unrelated duties," the regulations and interpretations emanating from the DOL are clear: employers may pay servers the tip credit wage for the time servers spend performing the duties of a server, even if the activities they perform are not all tip producing in and of themselves. The FLSA "does not convert federal judges into time-study professionals and require every minute to be accounted for . . . when the vast majority of employees' time qualifies for a particular treatment under the Act, that treatment can be applied to the entire period." *Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 555 (7th Cir. 2016).

Only employers who also engage servers in ***different*** occupations must distinguish between the time servers spend performing their jobs as servers and the time they spend

---

[5] Available here: https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-30#B30d00.
[6] The O*NET listing for waiters and waitresses is available here: https://www.onetonline.org/link/summary/35-3031.00#menu, and attached hereto as Exhibit 14.

performing the duties of their second occupation.  Thus, courts have uniformly rejected attempts to apply the dual jobs regulation to situations where, as here, a worker holds a single job but performs both tipped and non-tipped activities in that job.  *See, e.g.*, *Pellon*, 528 F. Supp. 2d at 1312.

Here, Rafferty identifies four specific tasks as "unrelated" to her job as a server and supporting her dual jobs claim:  (i) greeting and seating guests, (ii) taking payment form guests at the front of the restaurant, (iii) answering the phone, and (iv) handling to-go orders, including taking the order over the phone and packaging utensils and condiments with the food.  (SOF ¶¶ 52-56.)

Importantly, Rafferty admits that she performed each of these tasks while simultaneously attending to seated customers.  (*Id.* ¶¶ 53-56.)  In other words, she never performed these tasks separate and apart from her work as a server.  Moreover, Rafferty also acknowledges that each of these duties had an impact on the amount of tips she received and she does not actually believe Denny's was required to pay her more for doing them.  (*Id.* ¶ 52.)

Even had Rafferty not conceded that these duties cannot support her claim, the DOL guidance and case law would have made that result perfectly clear.  All four of the tasks Rafferty identifies are explicitly included as "core" tasks of the waitress profession according to O*NET.  (Ex. 14 (listing "collect payments from customers," and "assist host or hostess by answering phones to take reservations or to-go orders, and by greeting, seating, and thanking guests" as core tasks).)  Thus, all four are "related to" Rafferty's server position under DOL guidance, and Denny's was permitted to take a tip credit for her time spent performing those duties as a matter of law.  DOL FOH Ch. 30d00f(3); 29 C.F.R. § 531.56(e).  This is dispositive.

Notably, Courts have dismissed dual jobs claims based on the same tasks Rafferty raises here.  *E.g.*, *Townsend v. BG-Meridian, Inc.*, No. CIV-04-1162-F, 2005 U.S. Dist. LEXIS 45200,

at *19 (W.D. Okla. Nov. 7, 2005) (granting summary judgment on dual jobs claim based on the portions of plaintiff's shift spent operating the cash register and taking phone orders because the "cash register and phone duties were merely related duties incident to [plaintiff's] waitress position"); *Fast v. Applebee's Int'l, Inc.,* No. 06-4146-CV-C-NKL, 2010 U.S. Dist. LEXIS 19571, at *7 (W.D. Mo. Mar. 4, 2010) (providing menus is part of the essential duties of a server).

Finally, Rafferty admits that she does not know how much time she spent performing any of these alleged dual occupation duties.  (SOF ¶¶ 53-56.)  For the same reasons described below under the 20% rule analysis, that admission alone is sufficient to dismiss Rafferty's dual occupation claim.  *See Schaefer*, 829 F.3d at 555 (plaintiff must be able to identify the amount of time she spent on the disputed duty to determine whether employer owes full minimum wage).

## C.      RAFFERTY'S 80/20 RULE CLAIM FAILS FOR MULTIPLE REASONS

Rafferty claims that she spent more than 20% of her time doing sidework and, therefore, should have been paid full minimum wage for that time.  (Compl. ¶ 61.)  This cause of action relies on the so-called 80/20 or 20% "Rule" first implemented by the DOL in 1988 through a revision to the FOH.   DOL Handbook (1988) § 30d00(e). The 20% rule prohibits an employer from taking a tip credit when the tipped employee spends more than 20 percent of the hours worked in the workweek performing related duties, which are not by themselves directed toward producing tips.

### 1.      Rafferty cannot rely on the 20% Rule because the DOL rescinded it

On November 8, 2018, the DOL expressly rescinding the 20% rule.  U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Nov. 8, 2018), 2018 DOLWH LEXIS 29.  Specifically, the DOL rejected the placement of any limitation on the amount of time tipped employees can spend performing duties related to that occupation, contemporaneously with customer-facing duties.  *Id.*

-15-

The letter also expressly states that the principles in the letter supersede the guidance regarding dual jobs articulated in prior versions of the FOH. *Id.* The DOL also subsequently published a Field Assistance Bulletin to provide guidance to employers on the changes, which states:

> WHD [Wage and Hour Division] will no longer prohibit an employer from taking a tip credit based on the amount of time an employee spends performing duties related to a tip-producing occupation that are performed contemporaneously with direct customer service duties or for a reasonable time immediately before or after performing such direct-service duties.

Field Assistance Bulletin No. 2019-2 (Feb. 15, 2019), available at https://www.dol.gov/whd/ FieldBulletins/fab2019_2.htm (last visited June 23, 2020). "Importantly, the Bulletin states that the Revised Handbook's guidance is to be used retroactively, that is, in any open or new investigation concerning work performed prior to the issuance of the Revised Handbook. This retroactive application of DOL guidance comports with common sense, as the FLSA tip-credit provision has not changed, only the DOL's interpretation of it." *Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CV-01193-FB, 2019 U.S. Dist. LEXIS 82079, at *13 (W.D. Tex. Apr. 3, 2019) (internal citations omitted). Thus, Rafferty's 20% rule claim "fails as a matter of law under this revised DOL guidance." *Id.* (adopting Magistrate's Report and Recommendation granting summary judgment in employer's favor).

In her Complaint, Rafferty attempts to avoid the obvious consequences of the DOL's rescission of the 20% rule by claiming the sidework at issue was not performed contemporaneously with her direct customer service duties. (Compl. ¶ 61.) However, Rafferty testified that she is not able to identify any particular time that she performed sidework without simultaneously taking tables or attending to guests. (Rafferty Dep. 159:9-12, 163:1-13.) Rafferty's inability to show that she spent any time, let alone excessive time, performing sidework not "contemporaneously with [her] direct customer-service duties" easily defeats her attempt to avoid the obvious problem the rescission

of the 20% rule creates for her case. DOL Opinion Letter (Nov. 8, 2018), 2018 DOL WH LEXIS 29 at *7.

> ### 2.     Rafferty Cannot Establish She Spent More Than 20% of Her Time Performing Non-Tipped Duties During Any Workweek

Even assuming the 20% "rule" applied, which it does not, Rafferty's claim fails as a matter of law because she cannot establish that she spent more than 20% of her time performing related, non-tip producing duties during any workweek.  "An employee who brings a lawsuit under the FLSA for unpaid minimum wages or unpaid overtime compensation and liquidated damages bears the initial burden of proving that she performed the work for which she was not properly compensated." *Perez v. Palermo Seafood, Inc.*, 548 F. Supp. 2d 1340, 1346 (S.D. Fla. 2008).  Thus, to establish a violation of the 20% rule, Rafferty has the burden of proving that she spent more than 20% of her time performing non-tipped duties in a workweek.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (FLSA plaintiffs must "prove[] that . . . [they have] in fact performed work for which [they were] improperly compensated" and "produce[] sufficient evidence to **show the amount and extent of that work** as a matter of just and reasonable inference") (emphasis added); *see also Fast*, 638 F.3d at 882 (finding in a 20% rule or dual occupation claim, "the initial burden [is] on the employees to establish they worked hours for which they were not properly paid").

Here, Rafferty cannot satisfy her burden of showing the sidework she performed during any specific workweek, when she performed it, and that she spent more than 20% of her time within a workweek performing sidework.  In her deposition, Rafferty repeatedly admitted that she has no way of identifying how much time or what percent of her time she spent performing non-tipped duties during any shift of workweek and that she is not able to identify any particular shift or week during which she exceeded the 20% threshold.  (SOF ¶¶ 46-48; Rafferty Dep.

117:5-20, 147:11-17, 148:2-148:15.)  As Rafferty conceded:  any percentage estimates she provides regarding how much time she spent doing sidework is nothing but a "guess."  (SOF ¶ 48; Rafferty Dep. 118:15, 119:1-8, 148:15-18.)  Indeed, Rafferty testified she is not even "sure if there was *any* particular week [she] spent more than 20 percent of [her] time doing sidework." (Rafferty Dep. 148:12-18.)  Her sworn declaration stating "at least 40 percent" of her time was spent on sidework was "not [] accurate."  (*Id.* 73:12-19; SOF ¶ 49.)

Rafferty's inability to provide evidence of the amount of time she spent performing the non-tipped duties makes it impossible for her to establish she surpassed the 20% threshold during any week and entitles Denny's to judgment as a matter of law on her 20% rule claim.  *See, e.g.*, *Pellon*, 528 F. Supp. 2d at 1314 (granting motion for summary judgment where plaintiffs presented no evidence they spent more than 20% of their time performing non-tipped duties); *Crate v. Q's Rest. Grp. LLC*, 2014 U.S. Dist. LEXIS 61360, at *15 (M.D. Fla. May 2, 2014) (finding that the *plaintiffs* must show discrete time periods when they engaged in related, non-tipped activities for more than 20% of their worktime); *Viet v. Le*, 951 F.3d 818, 824-25 (6th Cir. 2020) (a plaintiff's testimony that he "typically worked 60 hours per week" was not sufficiently detailed to support his burden of proof on summary judgment for overtime claim).

In fact, Rafferty's testimony actually establishes that she did *not* exceed the 20 percent threshold.  When asked to estimate how much time she spent doing sidework during a randomly selected workweek, Rafferty estimated 1 hour of sidework, which amounted to just 16% of her 5.98 hours worked.  (SOF ¶ 50.)  This further supports summary judgment in Denny's favor.  *See Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1367 (S.D. Fla. 2009) (finding plaintiff did not spend more than 20% of her time doing sidework and, therefore, the tip credit was properly taken by the employer).

Furthermore, Rafferty's testimony indisputably demonstrates that—beyond mere guesswork—she cannot establish that she performed sidework (much less an excessive amount of sidework) during "discrete time periods" where she was not also serving customers. *Crate,* 2014 U.S. Dist. LEXIS 61360, at 14-15. *Crate*—in line with DOL's 2018 Opinion Letter--further clarified that the 20% rule (if applicable at all)  does not permit "plaintiffs to scrutinize every day minute by minute, [in an] attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly."  Rather, the rule only applies "**to the extent that there are discrete time periods—such as before the restaurant opens to customers, after the restaurant is closed to customers, or between the lunch and dinner shifts—during which the Plaintiffs can show that they were engaged in related, non-tipped activities**." *Id.*

Rafferty never spent more than 20% of her workweek performing non-tipped work during such discrete time periods.  First, Rafferty admits she did not perform pre-shift sidework. (SOF ¶ 42.)  Second, she admits that she was not required to perform her sidework during any particular point of her shift, but instead she could complete her sidework at any time before she left. (*Id.* ¶ 43.)  Third, Rafferty cannot identify a single discrete shift where she is confident that she solely performed side duties without attending to guests.  (*Id.* ¶¶ 44-45.)  Rafferty's 20% rule claim must fail.

**D.      DENNY'S PAID RAFFERTY IN GOOD FAITH AND A TWO-YEAR STATUTE OF LIMITATIONS APPLIES**

For all of the reasons detailed above, this case should be dismissed as a matter of law.  If, however, the Court deems any claim should proceed (which it should not), Denny's moves for summary judgment on grounds that any such claim be limited to the "ordinary" two-year statute of limitations under the FLSA.  29 U.S.C. § 255(a).  The FLSA contains a three-year statute of limitations that is applicable only upon a showing that the employer's violation of the FLSA was

willful in nature.  *Id.*  Rafferty bears the burden to prove willfulness.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  Mere knowledge that the FLSA exists or applies to an employer is not sufficient to establish willfulness.  *Id.*

Here, Rafferty has not offered or adduced a shred of evidence that Denny's willfully flouted its obligations under the FLSA.  Nor can she.  Denny's implemented comprehensive company policies and documents intended to ensure that all servers, including Rafferty, were properly paid. Denny's exhaustive efforts included providing General Managers with numerous documents, like the Employee Information Sheet, Employee Guidebook, DOL Fact Sheet 15, Wage Hour Acknowledgment Forms, Labor Law posters, and Important Information For Tipped Employee Forms, regarding the tip credit notification information to be provided to servers.  (SOF ¶¶ 23-28, 31-34, 36.)  And Rafferty conceded those policies were followed during her orientation.  Denny's also requires that any employee be properly cross-trained and clock in under a different job code if the employee is performing any job (e.g., a "dual job") other than serving customers.  (SOF ¶ 57.)

There is simply no evidence in the record indicating that any wage violation was willful. Accordingly, Denny's respectfully requests that the Court grant summary judgment on the issue of willfulness and, if any claim in this action survives summary judgment, limit this matter to the applicable two-year statute of limitations.

## <u>CONCLUSION</u>

For the foregoing reasons, Denny's respectfully requests that the Court enter summary judgment in its favor on all claims and dismiss this action.

Dated:  July 24, 2020

Respectfully submitted,

By: s/ *Luis A. Santos*
_____
    Todd S. Aidman
    Florida Bar No. 173029
    taidman@fordharrison.com
    Luis A. Santos
    Florida Bar No. 84647
    lsantos@fordharrison.com

    FORDHARRISON LLP
    101 E. Kennedy Boulevard
    Suite 900
    Tampa, Florida 33602
    Telephone:  (813) 261-7800
    Facsimile:  (813) 261 - 7899

    Attorneys for Defendant Denny's, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 24, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

John R. Byrne, Esq.
johnbyrne@leoncosgrove.com
León Cosgrove, LLP
255 Alhambra Circle, Suite 800
Miami, Florida 33134

Clifford P. Bendau, II, Esq.
cliffordbendau@bendaulaw.com
Vendau & Bendau PLLC
P.O. Box 97066
Phoenix, AZ 85060

Gerald D. Wells , III, Esq.
gwells@cwglaw.com
Connolly, Wells & Gray, LLP
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19046

James L. Simon, Esq.
jameslsimonlaw@yahoo.com
Law Offices of Simon & Simon
6000 Freedom Square
Freedom Square II – Suite 165
Independence, Ohio 44131

Edward W. Ciolko, Esq.
eciolko@carlsonlynch.com
James P. McGraw, III, Esq.
jmcgraw@carlsonlynch.com
Matthew D. Brady, Esq.
mbrady@carlsonlynch.com
Carlson Lynch, LLP
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222

*/s/ Luis A. Santos*
_____
Attorney